**VERMONT SUPREME COURT**
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      25-AP-177

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,   2026

Lynette Manning\* v. Eric Slayton and
Amanda Slayton

    }
    }
    }
    }

APPEALED FROM:

Superior Court, Lamoille Unit, Civil Division
CASE NO. 23-CV-04775
Trial Judge: Benjamin Battles

In the above-entitled cause, the Clerk will enter:

Plaintiff appeals from the civil division's judgment in favor of defendants, who are plaintiff's daughter and son-in-law, in this boundary dispute.  We affirm.

In November 2023, plaintiff filed a complaint alleging that the southern boundary of her property (the "Manning lot") adjoined defendants' property (the "Slayton lot"), and that defendants' fence and outbuildings were encroaching on plaintiff's property.  Plaintiff sought a declaratory judgment as to the location of the boundary and for the fence and outbuildings to be removed.

The court held a bench trial in May 2025 and issued a written order containing the following findings.  Plaintiff's parents gave her the Slayton lot when she married Harland Manning in 1967.  The Slayton lot is approximately half an acre.  The deed conveying the lot to plaintiff and her husband described the property as follows:

> [A] triangular shaped piece of land bounded on the north by Tallman realty, on the south by a small brook and on the west by a State Highway, and further described as beginning at a point in the center line of the State Highway leading from Elmore to Worcester, said point is in the division line of the Tallman-Draper realty, thence run easterly along the division line between Tallman and Draper for 350 feet +/- to a point where said division line intersects a small brook; thence turn and run southwesterly along center line of said brook 300 feet +/- to a point in center line of said state highway; thence turn and run northerly along center line of said state highway for 200 feet +/- to point begun at.

In 1982, plaintiff and her husband acquired the Manning lot, which is approximately 4.5 acres. The property was surveyed in 1981 by Frederick Reed. The deed conveying the Manning lot describes it as follows:

> Starting at an iron pipe set at the edge of the easterly limits of the right-of-way of Vermont Route 12; said point is on the present boundary of the within Grantees/Grantors property, thence N 5° 30' E 206 feet, more or less, along the easterly limits of Vermont Route 12 to an iron pin set in said limits: thence S 50° 30' E 580 feet, more or less, to an iron pin set in the ground; thence S 50° 30' E 653 feet, more or less, to an iron pin set on a fence line; thence S 48° 30' W 173 feet, more or less, along a fence line and stonewall to an iron pin set in the ground; thence N 50" 30' W 623 feet, more or less, to an iron pin set in the ground; thence N 50° 30' W 462 feet, more or less, passing through an iron pipe to an iron pin set in the easterly limits of Vermont Route 12 and point of beginning.

The deed refers to the Reed survey for additional "aid in description." Plaintiff has lived on the Manning lot continuously since 1982.

In December 2003, plaintiff and her husband divorced. The divorce order awarded plaintiff the Manning lot and husband the Slayton lot. At some point after the divorce, defendants began living on the Slayton lot, though it was unclear when they acquired title to the property. The 1981 Reed survey indicated a garage on the Slayton lot that extended over the boundary line into the Manning lot. After the divorce, plaintiff's husband tore down the garage.

In 2014, defendants had a new survey conducted by David Peatman to mark the boundary line of the Slayton lot. Defendants later built a fence approximately one-to-two feet south of the boundary line with the Manning lot as found by the Peatman survey.

After plaintiff filed this lawsuit, defendants hired Gerald Stockman to conduct a new survey of the Slayton lot. The Stockman survey places the boundary line between the Manning and Slayton lots north of defendants' existing fence and outbuildings, meaning that the fence and outbuildings are entirely on defendants' property. Stockman testified to this effect at the bench trial. Plaintiff did not present evidence from a competing land surveyor or any other affirmative evidence that defendants were encroaching on her property.

The court found Stockman to be qualified and credible in his opinion regarding the boundary line. The court found that the evidence supported Stockman's conclusion that the Peatman survey pin marked the northwest corner of the Slayton lot. There was another surveyor pin at that corner, but no evidence was presented regarding that pin. There were also other markers in the ground that were placed at approximately the same location as, or north of, the Peatman pin.

Plaintiff asserted that the southern boundary of the Slayton lot, which is marked by a stream, had fluctuated over time. However, the court concluded that this was not relevant to the location of the northern boundary based on Stockman's testimony to that effect, and plaintiff failed to present evidence that historical fluctuations in the stream path required Stockman to survey the line differently.

The court also rejected plaintiff's argument that Stockman's survey was inaccurate because it marked the western boundary of the Slayton lot as 178.47 feet, rather than 200 feet as stated in the deed. The court found Stockman credible in his explanation that the source deed was approximate, as indicated by the "+/-" notation, and that it was not standard practice for modern surveyors to extend the boundary line into the middle of a public highway that the owner did not control. The court further noted that even if the western boundary was longer than stated by Stockman, this would push the northern boundary further north and away from defendants' allegedly encroaching structures. The court therefore entered judgment for defendants. Plaintiff appealed.

On appeal, plaintiff argues that the court erred and that defendants are encroaching on her property. She alleges that she has been subjected to a campaign of harassment by defendants who are seeking to take what is hers. She argues that the Reed survey is correct and that the Peatman and Stockman surveys are "not legal." She alleges various discrepancies between the deed descriptions, surveys, and physical evidence.

"The location of a boundary line on the ground is a question of fact to be determined on the evidence. The trial court's findings of fact will not be overturned unless clearly erroneous despite inconsistencies or substantial evidence to the contrary." Monet v. Merritt, 136 Vt. 261, 265 (1978).

Plaintiff fails to demonstrate error in the court's findings, which are supported by Stockman's testimony. While plaintiff argues that the court should have followed the Reed survey, Stockman testified that his survey was generally consistent with the Reed survey and provided explanations for discrepancies that the court found credible. Stockman testified that the encroaching garage and barn depicted on that survey had been torn down. His survey showed that defendants' existing structures were south of the shared boundary. Plaintiff did not present any evidence of a different location for the line. Under these circumstances, we see no error in the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Nancy J. Waples, Associate Justice